**FILIUPU A. OFISA, Claimant,**

**v.**

**POGISA TUIOLEMOTU, Administrator of the Estate of AUKUSO M. TUIVETA, and TE`I TAUFA`ASE, Objectors.**

---

**POGISA TUIOLEMOTU, Administrator of the Estate of AUKUSO M. TUIVETA, Claimant,**

**v.**

**LOGOAI SIAKI, AINA SAOLUAGA NUA, FILIUPU A. OFISA, and LAIE MATA`UTIA, Objectors.**

High Court of American Samoa
Land and Titles Division

LT No. 22-94
LT No. 14-97

June 18, 2001

Before RICHMOND, Associate Justice, and SAGAPOLUTELE, Associate Judge.

Counsel: For Claimant/Objector Filiupu A. Ofisa, Aumoeualogo S. Salanoa
For Claimant/Objector Pogisa Tuiolemotu, Administrator of the Estate of Aukuso M. Tuiveta, and Objector Logoai Siaki, Aitofele T. Sunia
For Objector Te'i Taufa'ase, *Pro Se*
For Objector Ama Saoluaga Nua, Tauivi Tuinei

OPINION AND ORDER

Both of these actions arose out of objections to offers to register land in the Village of Fitiuta on the Island of Ta'u in the Manu'a Islands. A portion of the lands claimed by the two original claimants and several objectors overlap in varying ways. Within the common area of the overlaps, the American Samoa Government ("ASG") located a well to provide water to the residents of Fitiuta. The American Samoa Power Authority ("ASPA") now has jurisdiction over the well. An access road crosses the claimed lands, and a part of the road is within the overlaps. On March 23, 1998, the two actions were consolidated because of the overlaps and parties common to both actions.

Before trial, several of the original parties to this action were replaced. Filiupu Galea'i ("Filiupu G."), the original land registration claimant in LT No. 22-94, passed away and was replaced by claimant/objector Filiupu A. Ofisa ("Filiupu O."), the present Filiupu titleholder. Aukuso M. Tuiveta ("Aukuso"), the original land registration claimant in LT No. 14-97 and an original objector in LT No. 22-94, also passed way, and his claim is now handled by his daughter and administrator of his estate, claimant/objector Pogisa Tuiolemotu ("Pogisa"). Te'i Lanu Fetu ("Te'i L."), an original objector in LT No. 22-94, passed away and was replaced by his son, objector Te'i Taufa'ase ("Te'i T."), who now holds the Te'i title. So'oupu Ama Savea ("So'oupu"), an original objector in LT No. 14-97, was replaced by her son, objector Ama Saoluaga Nua ("Ama"), who recently succeeded to the Ama title. Objector Laie Mata'utia ("Laie") in LT No. 14-97 never filed a statement of claim and, by this inaction, dropped out of the case.

Trial commenced on April 10, 2001, and concluded on April 18, 2001. On May 11, 2001, the court inspected the lands claimed with a

designated spokesperson of each of the four parties still actively pursuing their claims.

## I. The Offers of Land Registration

### A. The Filiupu Registration

On September 4, 1992, pursuant to A.S.C.A. § 37.0101-.0120, Filiupu G. filed with the Territorial Registrar his offer to register approximately 0.712 of an acre, named "Lalopiu," as his individually owned land. The offer was duly noticed in accordance with A.S.C.A. § 37.0103. Aukuso and Te'i L. objected in a timely manner. Aukuso asserted that the land offered for registration by Filiupu G. encroached upon his individually owned land. Te'i L. declared that Filiupu G.'s claim encroached upon the Te'i family's communal land. Both encroachments involved the well site and an immediately adjacent portion of the access road. Accordingly, the matter was referred to the Secretary of Samoan Affairs for dispute resolution proceedings, mandated in communal land controversies, and in due course on March 14, 1994, the Secretary issued a Certificate of Irreconcilable Dispute, a jurisdictional requirement for judicial communal land title determinations. A.S.C.A. § 43.0302; *Ava v. Logoa'i*, 20 A.S.R.2d 51, 52 (Land & Titles Div. 1992). On July 1, 1994, the Registrar referred the matter to this Court for resolution. The referral became LT No. 22-94.

Filiupu G. offered to register the land he claimed as his individually owned land. However, at trial, the testimony of the Filiupu family members on behalf of Filiupu O. made clear that Filiupu O. considered the land to be Filiupu family communal land.

### B. The Aukuso Offer of Registration

On December 5, 1995, Aukuso offered to register approximately 1,442 acres, named "Loi," as his individually owned land. After notice of the offer was disseminated, objectors Logoai Siaki ("Logoai"), So'oupu, Filiupu G., and Laie timely opposed the registration. All four objectors asserted that the land claimed by Aukuso encroached upon their lands, specifically upon the area of the well site and an adjacent portion of the access road.

The Filiupu claim, whether as individually owned land or as family communal land, may be subordinate to the Galea'i family's claim to the same land as its communal land. We take judicial notice of *Tuiveta v. Te'i*, LT No. 30-85, dismissed without prejudice by bench order during trial on April 8, 1987. LT No. 30-85 involved claims to the same well site at issue in the present actions. In LT No. 30-85, the court had only a

survey showing a 20-foot square of land around the well. Competing claims to the well site were put forth by Aukuso as the Laie family's communal land (Aukuso testified that his father was Laie Misa, but his *matai* title "Tuiveta" was from his wife's family, the Galea`i family), by Te`i L. as the Te`i family's communal land, and by Galea`i Poumele as the Galea`i and Filiupu families' communal land. The Court recognized that each family owned land in the vicinity of the well. However, the Court declined to adjudicate the competing land claims in the absence of surveys of the entire area around the well site claimed by each family, and therefore dismissed the action until the parties were prepared to proceed in this manner.

The testimony and other evidence in LT No. 30-85 illustrate the marital alliances and other complex interrelationships among the families involved. This is also apparent in the present actions. We note one aspect here in particular. The Filiupu *matai* title serves the Galea`i *matai* title. *See In re Matai Title "Galea`i"*, MT No. 6-98, pretrial orders at 3 (Land & Titles Div. Nov. 19, 1999). Thus, it appears that the Filiupu claim, whether as individually owned land or as communal land, is subordinate to the Galea`i family's claim to the same land as its communal land. However, we do not need to decide that issue in the present actions.

So`oupu and Laie separately maintained each of their claims to be family communal land. As such, this controversy was referred to the Secretary of Samoan Affairs for dispute resolution proceedings, which on June 27, 1997, resulted in the issuance of a Certificate of Irreconcilable Dispute. On August 4, 1997, the Registrar referred this controversy for judicial determination. The referral became LT No. 14-97.

As noted previously, Laie did not pursue his contention of land ownership in the well-site area. Similarly, during Logoai's case-in-chief, Logoai's counsel advised the court that he also represented Pogisa as the administrator of Aukuso's estate. He further advised us that because the interests of Logoai and Aukuso in the land claimed for registration by Aukuso in LT No. 14-97 were in fact identical, Pogisa was withdrawing the claim of Aukuso's estate to the well-site area as individually owned land in favor of Logoai's claim to the same land as the Logoai family's communal land. With Laie and Aukuso withdrawn, the competing land claims enclosing the well site and disputed portion of the access road are reduced to the four by Filiupu O., Logoai, Ama, and Te`i T.

### Discussion

Each of the remaining four claimants presented evidence of family history and personal knowledge of the particular land over which each

claims ownership. Insofar as this evidence deals with relatively modern times, it is largely related to cultivated use of the land claimed. The evidence further demonstrates the intricate interrelationships between some of the families.

We need not dwell on the details of those relationships, however, except for conflicts in testimony that may truly impact our decision. The broad history of the area and our physical observations are far more persuasive factors.

The area where the well site and access road are located is known as "Faga" and has major historical significance. It is reputed to be one of the oldest, and some say the first, human settlement in the Samoan archipelago. Along the way, however, the settlement was removed to the present location of Fitiuta. Nonetheless, "Faga" never lost its sacred identity, and ownership of land within the area was apportioned as communal land among the families and under the *pule* ("authority") of the highest-ranking *matai* ("chiefs") of present-day Fitiuta.

The portion of "Faga" at issue lies immediately adjacent to the public road, which goes to Fitiuta to the east and to the Village of Ta`u to the west. The boundaries along the east and west sides of the apportioned lands within this portion of "Faga" were established in straight lines running from the public road at the north end towards the mountains at the south end. Before reaching the disputed area, the access road is clearly within the Te`i family's communal land, named "Sina." The communal lands of the Logoai, Patea, and Filiupu families are situated east of the Te`i family's communal land, towards Fitiuta, and communal lands of the Taaga and Paopao families are situated on the west side, towards Ta`u.[1]

According to Te`i T., the southern boundary of his land claim is the northern boundary of Logoai's land claim. In Te`i T,'s survey, this boundary is shown sufficiently inland to place the well site and the disputed portion of the access road within the southeast area of his land claim. The eastern boundaries of both Te`i T.'s survey and Logoai's survey (originally Aukuso's survey) also coincide roughly in this area. Te`i T.'s southern boundary does not, however, follow any clearly discernible boundary marked by trees or other identifying markers.

■ The northern and eastern boundaries of Logoai's survey enclose the well site and the disputed portion of the access road within the northeast area of his land claim. Unlike Te`i T.'s placement of the boundary

---

[1] We have listed the communal land in geographical order from the public road towards the inland direction.

234

between his and Logoai's land claim, the northern boundary of Logoai's survey follows a distinct line of trees. This court has found a straight line of trees, a common method of defining boundaries between adjacent, unregistered tracts of land in Samoa, to be strong circumstantial evidence of a historic boundary. *See Faleafine v. Suapilimai*, 7 A.S.R.2d 108, 112 (Land & Titles Div. 1988). In weighing the lack of distinguishing field markers defining the southern boundary in Te'i T.'s survey against the actual line of trees along the northern boundary of Logoai's survey, we must give deference to the circumstance of existing trees. We therefore find that the northern boundary of Logoai's survey is the southern boundary of the Te'i family's communal land, and that the well site and the disputed portion of the access road are outside of the Te'i family's communal land.

Filiupu O.'s survey is not configured in the manner used to apportion the lands within "Faga." Neither the east nor the west boundaries of this survey follow anything near straight lines. The east boundary artificially juts out to include approximately one-half of the eastern side of the well site, and a substantial part of the eastern side of disputed portion of the access road within this survey. Strangely, this configuration happens to put the western side of well site and the disputed access road within the Ama family's land claim. This delineation of the boundary appears to be deliberately rather than coincidentally determined for these actions. The evidence shows that the Filiupu family owns communal land in this vicinity. However, we find that the well site and the disputed portion of the access road are outside of the Filiupu family's communal land.

Ama did not present a survey of his land claim. However, Ama's land claim essentially coincides with Logoai's land claim, except he agreed that the eastern boundary of the Ama family's communal land is the same as the western boundary of the Filiupu family's communal land. Thus, Ama claims approximately one-half of the western sides of the well site and the disputed portion of the access road, as defined by the peculiar boundary between his and Filiupu O.'s land claims. Unlike Logoai's survey that defines the boundaries of his land claim consistently with the traditional layout of lands in "Faga" established by the ranking Fitiuta *matai*, we do not believe that there is any historical basis for the common boundary claimed by Ama and Filiupu O.

So'oupu, Ama's mother, pointed out that her family had a plantation *fale* within Ama's land claim. Her father, however, was from the Logoai family. She further testified that her brother Kiliona held the Ama title as the *sa'o* ("head chief") of the family, as proof of Ama's land claim. She claimed that Kiliona as the Ama permitted Aukuso to maintain a plantation on the land. She admitted, however, that Kiliona later held the Logoai title as the *sa'o* of the Logoai family. The present Logoai

maintained that Kiliona as the Logoai authorized Aukuso's plantation. Furthermore, Aukuso's son acknowledged that he currently plants within the land claimed by both Logoai and Ama, as his father used it before him, under the authority of the Logoai title. No doubt the connection between the Logoai and Ama families in the past lends to confusion over ownership of land each family is now claiming.

■ The Logoai title is a high-ranking *matai* in the hierarchy of Fitiuta. The Filiupu, Te'i, Patea, Taaga, and Paopao titles, which have *pule* over lands in the immediate proximity of the land claimed by Ama and Logoai, are comparable in rank to the Logoai title. The Ama is a lesser title in the village hierarchy, and it is unlikely that the Ama title would control land in Faga in the same vicinity of the lands held by these other titles.

We hold, therefore, that the land within Logoai's survey (formerly Aukuso's survey), which encompasses the well site and the disputed portion of the access road, is the Logoai family's communal land.

### Order

1. The land within Logoai's survey, which encompasses the well site and the disputed portion of the access road, is the Logoai family's communal land. The Territorial Registrar is directed to register this land in this manner.

2. Logoai is entitled to receive the unpaid compensation from ASPA or ASG, or both, accrued for use of the well site and access road within the land from the inception of the well site and access road to the present time, and accruing in the future.

It is so ordered.